UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                        CASE NO: 2:11-cr-97-JES-NPM

ERIC BONITA

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant Eric Bonita's Motion for Reduced Sentence (Doc. #918) filed on February 5, 2026. The government filed a Response to Defendant's Motion for Reduced Sentence Under 18 U.S.C. § 3582(c)(1) (Doc. #919) on February 18, 2026, and defendant filed a Reply in Support (Doc. #924) on February 27, 2026, with leave of Court.  For the reasons set forth below, the motion is granted in part.

*I.*

On September 5, 2012, a federal grand jury in Fort Myers, Florida returned a twelve-count Second Superseding Indictment (Doc. #282) charging Defendant Eric Bonita (Bonita or Defendant) and six co-defendants with various drug offenses.  Bonita was charged in three of the counts.  Count One charged Bonita and six others with conspiracy to manufacture, possession with intent to distribute, and distribution of 280 grams or more of cocaine base, also known as crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) and 846.  Bonita was also charged in Count Ten and

Count Twelve with distributions of cocaine base, also known as crack cocaine.

Prior to trial, the government filed a Notice of Intention to Use Prior Convictions to Enhance the Penalty as to Count One, Count Ten, and Count Twelve (Doc. #323) pursuant to 21 U.S.C. § 851. This Notice identified five prior felony convictions and made Bonita eligible for an enhanced penalty of a minimum mandatory term of life imprisonment without parole (and a fine not to exceed $20 million) as to Count One and a maximum term of imprisonment of up to 30 years (and a fine not to exceed $2 million) as to Counts Ten and Twelve, with supervised release of at least 6 years as to Counts Ten and Twelve.

The Court conducted an eleven-day jury trial for Bonita and co-defendants Jude Sereme, Neheme Ductant, Rick Jean, Wilmane Jean, and Jophaney Hyppolite. At the close of the government's proof, the Court granted a Rule 29 motion as to Count Twelve and the count was dismissed. (Doc. #377.) On October 5, 2012, the jury found Bonita guilty of Counts One and Ten. (Doc. #383.) As to Count One, the jury found that the amount of cocaine base involved in the conspiracy was more than 280 grams (but less than 840 grams). (Doc. #383.)

On October 31, 2012, the Court denied Bonita's Motion for Judgment of Acquittal, Notwithstanding the Verdict or, in the Alternative, for a New Trial (Doc. #399). (Doc. #409.)

- 2 -

At sentencing, under the 2012 Sentencing Guidelines, Bonita's base offense level was level 32 as the result of the amount of cocaine base found by the jury to have been involved in the conspiracy. Bonita received 2 additional levels for possession of a dangerous weapon, for a total offense level of 34. However, Bonita was determined to be a career offender because he had previously been convicted of at least two prior qualifying felony convictions, specifically (1) unlawful possession with intent to sell cocaine and marijuana in 2005, and (2) unlawful possession with intent to sell cocaine in 2006. This provided a total enhanced offense level of 37. (Doc. #790, ¶¶ 62-73.) Bonita's total criminal history score was 9, which under the Sentencing Guidelines was a category IV. As a career offender, however, Bonita's criminal history category became a category VI. (Id. at 86-87.) The resulting statutory terms of imprisonment were a mandatory minimum life imprisonment for Count One and a maximum term of imprisonment of thirty years for Count 10. Under the Sentencing Guidelines, the imprisonment range was 360 months to life, but since the mandatory statutory sentence for Count One was life, the Sentencing Guidelines range became life. (Id. at 129-140.)

- 3 -

The Court sentenced Bonita to (mandatory) life imprisonment as to Count One and 30 years of imprisonment as to Count Ten[1], to be served concurrently, followed by concurrent ten-year terms of supervised release.   (Doc. #446.)   Judgment (Doc. #448) was entered on January 23, 2013.   Bonita's convictions and sentences were affirmed on direct appeal, but the case was remanded to correct a scrivener's error in the written judgment.   (Doc. #627); United States v. Hyppolite, 609 F. App'x 597, 614 (11th Cir. 2015). An Amended Judgment (Doc. #635) was entered on July 24, 2015.

On September 26, 2016, Bonita filed a Motion to Vacate pursuant to 28 U.S.C. § 2255 (Doc. #682), which he was later allowed to supplement (Docs. ## 687, 689).   On September 25, 2019, the Court denied habeas relief under 28 U.S.C. § 2255. (Doc. #737); Bonita v. United States, No. 2:16-CV-729-FTM-29NPM, 2019 WL 4673809 (M.D. Fla. Sept. 25, 2019).

Bonita filed numerous post-convictions motions seeking a lower sentence.  On October 8, 2019, Bonita filed a pro se letter-motion requesting a reduction of sentence pursuant to the First Step Act of 2018.   (Docs. #743, #748.)   The Federal Public Defender's Office was appointed.  (Doc. #745.)   The United States Probation Officer determined Bonita was not eligible under the First Step Act, and he and his attorney requested to withdraw the

---

[1] The Judgment referred to Count Eleven, but this was corrected to Count Ten, the actual count of conviction.

motion.   (Docs. #790, #804.)   The request to withdraw the First Step Act motion was granted on March 24, 2021. (Doc. #805.)

Bonita filed a letter-motion for compassionate release (Docs. #769, #770) on August 10, 2020.  The government filed a Response (Doc. #771) opposing compassionate release.  On August 18, 2020, the undersigned denied Bonita's motion for compassionate release. (Doc. #772.)  A Second Amended Judgment (Doc. #775) was issued on September 15, 2020.

On January 3, 2022, Bonita filed a request for a reduced sentence based upon changes in the law pursuant to the First Step Act. (Doc. #808.)   The Court denied that motion on January 10, 2022.  (Doc. #809.)  On August 8, 2022, Bonita filed a Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c) (Doc. #814).  The Court denied that motion on August 25, 2022.  (Doc. #819.)

Bonita's current Motion for Reduced Sentence asserts that the Court now has the authority to reduce his sentence and the factual reasons to do so.  The government asserts that Court has no such authority and no reason to do so even if it had the authority.

## II.

A district court "has no inherent authority to modify a defendant's sentence; it may do so only when authorized by a statute or rule." United States v. Puentes, 803 F.3d 597, 606 (11th Cir. 2015).  By statute, a district court is authorized to

reduce a term of imprisonment when three requirements are satisfied: (1) there are "extraordinary and compelling reasons" for granting a sentence reduction under § 1B1.13 of the Sentencing Guidelines; (2) the 18 U.S.C. § 3553(a) factors favor a reduction; and (3) awarding a sentence reduction would not endanger any person or the community. United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)). If a defendant fails to satisfy even one of these requirements, a court cannot grant relief and need not analyze the remaining requirements. United States v. Giron, 15 F.4th 1343, 1348 (11th Cir. 2021). See also Tinker, 14 F.4th at 1237–38; United States v. Harris, 989 F.3d 908, 912-913 (11th Cir. 2021).

As to the first requirement, § 1B1.13 of the Sentencing Guidelines sets forth a list of what qualifies as "extraordinary and compelling reasons" to reduce a sentence. Effective November 1, 2023, the Sentencing Guidelines provide that "extraordinary and compelling reasons" may exist when a defendant received an "unusually long sentence" and satisfies certain other requirements:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the

> sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Sentencing Guidelines § 1B1.13(b)(6).

As to the second requirement, a district court must conclude that the § 3553(a) factors support a reduction of sentence. Tinker, 14 F.4th at 1237, 1240-41. "[T]he weight given to each factor is committed to the sound discretion of the district court," and the court "may attach great weight to one § 3553(a) factor over others." United States v. Butler, 39 F.4th 1349, 1355 (11th Cir. 2022).

Finally, defendant must also not be a "danger to the safety of any other person or the community" and the reduction must be "consistent with this policy statement."  U.S.S.G. § 1B1.13(a)(2), (3).

If all conditions are satisfied, a change in law "*may* be considered in determining whether the defendant presents an extraordinary and compelling reason," after giving "full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6) (emphasis added).  Bonita asserts that he fits squarely within the terms of § 1B1.13(b)(6) and should have his unusually long sentences reduced.  The government sees both points differently.

*III.*

**A. Sentencing Commission Authority**

The government takes the position that "a change in law is not a valid basis for compassionate release under any provision of section 1B1.13, including the unusually long sentence provision", and "the unusually long sentence provision fails because its adoption exceeded the statutory authority of the Sentencing Commission." (Doc. #919, p. 7.)

By statute, the Sentencing Commission is charged with promulgating guidelines for a sentencing court to use in determining the sentence to impose. The Sentencing Commission also makes "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes" of Section 3553(a)(2), including modification provisions under Section 3582(c). 28 U.S.C. § 994(a)(2)(C). "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

"There is no question that 1B1.13 is *the* policy statement the Commission adopted to comply with this statutory mandate…. In other

- 8 -

words, the statutory context shows us that the Commission had an obligation to define 'extraordinary and compelling reasons' for all motions under the statute, and that the Commission did so in 1B1.13." United States v. Bryant, 996 F.3d 1243, 1255 (11th Cir. 2021) (emphasis in original) (internal citations omitted). The Court finds, as discussed in the Bonita's Reply (Doc. #924, pp. 1-3), the amendment to § 1B1.13 was within the Commission's power and is binding in the Eleventh Circuit. See also United States v. McCain, 739 F. Supp. 3d 1026, 1030 (M.D. Fla. 2024) (collecting cases).

### B.  Application to Current Case

As threshold matters, it is undisputed that Bonita has exhausted his administrative remedies and has served at least 10 years of his term of imprisonment. Bonita has therefore satisfied these requirements of § 1B1.13(b)(6).

### (1)  Extraordinary and Compelling Reason – Unusually Long Sentence

Bonita argues that he is eligible for a sentence reduction under § 3582(c)(1)(A) because he received an "unusually long sentence", he meets the other requirements for a sentence reduction, and an intervening change in law has produced a gross disparity between the sentence he is serving, and sentences being imposed in similar cases at the time the motion was filed. (Doc. #918, pp. 8-12.)  Bonita argues that the same conduct with the

same record today would mean a statutory range of 10 years to life imprisonment on Count One, and up to 20 years imprisonment on Count 10.  The government does not dispute this representation.

The Court has previously found that a sentence of life can be considered an "unusually long sentence."  United States v. Hyppolite, No. 2:11-CR-97-JES-NPM, 2024 WL 5100365, at *4 (M.D. Fla. Aug. 7, 2024) (collecting cases), decision clarified on reconsideration, No. 2:11-CR-97-JES-NPM, 2024 WL 5100360 (M.D. Fla. Sept. 12, 2024).  The Court finds that the sentences imposed on Bonita were "unusually long sentence[s]" within the meaning of § 1B1.13(b)(6) and that the change in law pertinent to this case produces a gross disparity between Bonita's sentence and the sentences likely to be imposed on similarly situated defendants as of the date the motion was filed.

**(2)  Danger to Safety of Others or Community**

Despite these findings, Bonita recognizes that to be eligible for a sentence reduction he must show that "he does not pose a danger."  (Doc. #918, pp. 8, 13.)  The Court may reduce a term of imprisonment only if it determines defendant "is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(a)(2).

The underlying facts in this case certainly establish that defendant was a danger to the safety of others and the community at the time of his federal offenses.  In July 2010, the Lee County

Sheriff's Office Narcotics Unit (LCSO) opened a case regarding suspected drug distribution houses in North Fort Myers (Suncoast) and in South Fort Myers (Linda Loma).  Jude Sereme was the organizer/leader and Bonita was a distributor out of the Linda Loma location.  In September and October 2011, Bonita was present and/or involved in the sales of crack cocaine to a confidential purchaser at the Linda Loma location.  On October 18, 2011, law enforcement executed a search warrant and found Bonita inside the Linda Loma residence with a .38 Special revolver with 4 rounds of ammunition, a digital scale, Western Union receipts, drug ledgers, 5 cellphones, and $1,540.  (Doc. #790, Presentence Report (PSR) ¶¶ 18-55.)

Bonita also has a significant criminal history pre-dating this case.  Bonita's first arrest was at age 17[2] when he was observed playing a street dice game for money and fled the scene. He was charged with games of chance and resisting arrest without violence.  Bonita's first drug offense conviction occurred when he was 18 years old.  Officers recovered 32 small bags of marijuana and 11 small bags of cocaine.  During booking, deputies found a small bag of crack cocaine in Bonita's left shoe.  Bonita entered a plea of guilty to two counts of possession with intent to sell. When Bonita was 19 years old, he was arrested and found in

---

[2] Bonita had several minor offenses as a juvenile starting at age 15 years old.  (Doc. #790 at ¶¶ 88-90.)

- 11 -

possession of 18 bags of cocaine.  This offense was committed while he was on bond for a trespassing offense.  (Id. at 76, 79, 80-81.)  When Bonita was 21, he was observed exiting a house known for drug sales and was attempting to discard 5 small bags of crack cocaine when approached.  (Id. at 82.)  Bonita was shot on two occasions.  One bullet was lodged between his jaw and auditory canal and Bonita experiences frequent headaches as a result.  (Id. at 109.)

Bonita argues that due in large part to this difficult childhood (discussed below), he has a "fairly lengthy criminal history that looks more serious than it actually is.  All his convictions were nonviolent with minimal if any jailtime." (Doc. #918, p. 15.)  Despite its length, Bonita asserts the criminal "history should not give the Court pause because it reveals that he is not violent and it is mitigated by his natural maturation and rehabilitation detailed below."  (Id. at 17.)  Despite these assurances, the criminal history does give the Court pause.

Bonita has had disciplinary violations while serving his current sentence.  While at USP Lee, Bonita accrued disciplinary violations starting in 2016, including possession of amphetamines, fighting, owning a 7.25-inch sharpened metal weapon, admitting to being under the influence of a foreign substance, and as recently as March 2025, refusing to provide a urine sample.  (Doc. #918-5.)  Bonita only takes responsibility for a "small fraction" of

- 12 -

the incident reports while he was at USP Lee, stating that most of the incident reports were falsified. (Doc. #918-6, pp. 3-4.) Elsewhere Bonita notes, somewhat inconsistently, that he "makes no excuse for [the disciplinary violations], but notes that he has already been appropriately punished for it." (Doc. #918, p. 20.) Bonita "submits that, at most, his disciplinary record should temper the extent of any sentence reduction, not result in an outright denial." (Id.) Bonita argues that there is no longer a need for a sentence that further protects the public because the public has been protected from him for almost fifteen years while he has been incarcerated. (Id. at 18.)

Bonita is an illegal alien subject to removal from the United States. Somewhat ironically, this appears to be a central argument as to why Bonita does not pose a danger to others or the community and why his "release plan ensures community safety." (Doc. #918, p. 20; Doc. #918-1, p. 3; Doc. #924, pp. 4-5.) But, as the government correctly notes, Bonita can contest the deportation and there is no pending removal order. (Doc. #919, p. 15.) While Bonita argues that "under the current administration's goal of rapidly deporting illegal immigrants, it is virtually guaranteed that he will be deported somewhere, whether that is his home country or some unknown third country" (Doc. #924, p. 5 n.2), the Court doubts that virtual guarantees are reliable in the immigration context.

- 13 -

While the Court is underwhelmed by much of Bonita's arguments as to the safety factor, the Court does conclude that there is enough merit in his arguments to find that safety to others or the community does not bar Bonita's attempts to obtain a sentence reduction.

### (3)  Additional Individual Circumstances

As Bonita recognizes (Doc. #918, p. 12), the Court must also give "full consideration of the defendant's individualized circumstances" when considering whether he received an "unusually long sentence". U.S.S.G. § 1B1.13(b)(6). According to Bonita, a full assessment of the § 3553(a)[3] sentencing factors confirms that

---

[3] Under 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed--
>
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and

- 14 -

his sentence should be reduced to a term of time served.  (Id. at 13-18.)

Bonita was approximately 25 years old when the original Indictment (Doc. #3) was returned on September 28, 2011, and he is currently approximately 40 years old.  Bonita recognizes that the nature and circumstances of the underlying conspiracy offense made it a serious offense, although he did not have a prominent role. (Doc. #918, p. 14.)

Bonita's personal history and characteristics were, in his view, "difficult."  (Id.)  According to the Presentence Report, Bonita was born in 1986, in St. Martin to parents that never married and separated shortly after his birth.  Bonita was sent

---

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established…

**(5)** any pertinent policy statement…

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

- 15 -

to live with a maternal aunt in the Dominican Republic.  At the time of the interview with the United States Probation Officer, Bonita had not spoken to his father since 1998.  Bonita's mother returned to St. Martin and retrieved Bonita in 1998, and they settled in Miami, Florida.  Bonita remains an illegal alien in the United States.  (PSR, ¶¶ 103-104.)  Bonita submitted a letter reflecting on his upbringing, recognizing poor decisions, grieving the loss of his mother, detailing his rehabilitation and difficulties with violence while incarcerated, and expressing hope to see his family.  (Doc. #918-6.)

Bonita asserts that he has made substantial rehabilitative efforts, such as working towards obtaining his GED, participating in several programming courses, and completing the Challenge Program in 2015. (Docs. #918-3, #918-4, #924, p. 4.)  However, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. 1B1.13(d).  Nonetheless, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  Id.

The other co-defendants received shorter sentences than Bonita, even though some played more extensive roles in the offenses and also had extensive criminal histories:

- Jude Sereme received 300 months (Docs. #542, #648)[4]

-  Neheme Ductant received an initial sentence of 292 months as to Count One that was reduced to 262 months (Docs. #483, #693)

- Rick Jean received 240 months (Doc. #522)[5]

- Wilmane Jean received 120 months (Doc. #523)

- Rashid Francois received a sentence of 240 months on Count One that was reduced to 210 months based on an applicable Amendment to the Sentencing Guidelines (Docs. #240, #714)[6]

- Fritzco Desir received 120 months (Doc. #611)

- Michael Dupin received 46 months (Doc. #429)

---

[4] Under the 2014 Sentencing Guidelines, the Base Offense was 30 but Sereme received an addition 4 levels as an organizer/leader of the drug distribution organization.  Sereme was also a career offender and had the same enhanced offense level of 37.  With a criminal history category of VI, Sereme's guideline range was 360 months to life.  The Court varied downwards after remand from the Eleventh Circuit reducing Sereme's sentence as to Count One to 300 months.  (Doc. #883.)

[5] Under the same 2012 Sentencing Guidelines as Bonita, Rick Jean also had an adjusted offense level of 37 but with a criminal history category of IV, the guideline range was 292 to 365 months. The Court granted a motion for a sentence below the advisory guideline range for 240 months.  (Doc. #757.)

[6] Under the 2012 Sentencing Guidelines, Francois was subject to a total offense level of 36 but had no Chapter Four enhancements and a criminal history category of IV.  Francois was subject to a guideline range of 262 to 327 months, but the Court granted a variance and imposed a sentence below this guideline range for a sentence of 240 months.

- Jennifer Nicole Sander received 130 months (Doc. #403)

- Jophany Hyppolite received a life sentence, but it was reduced to 300 months as to Count One concurrent to the term imposed as to Count Eleven.  Hyppolite, 2024 WL 5100365, at *8.

More recently, Jophaney Hyppolite, Neheme Ductant, and Rick Jean each received an Executive Grant of Clemency.  (Docs. ## 901-903.)

### (4)   Sentence Reduction

The Court concludes that Bonita is eligible for a sentence reduction and that a sentence reduction is appropriate in this case, although not to the extent Bonita seeks.  At sentencing, the Court noted on the record, "If left to my own, I would not impose a sentence of life in this case. I suspect that's why Congress made it mandatory, so judges would not deviate when they thought it was appropriate. I don't see this as a life case, despite the defendant's prior drug history. Nonetheless, based upon the Court's findings, the Court has no objection, and therefore the Court will impose the required sentence."  (Doc. #502, p. 55.) The facts and arguments presented to the Court in connection with the recent motion do not change the Court's mind that the mandatory sentence imposed was excessive.

Congress has determined that the appropriate mandatory minimum sentence for a § 841(b)(1)(A) conviction without a predicate conviction is 10 years.  None of Mr. Bonita's

- 18 -

convictions listed in the § 851 Information would count as predicates today because he did not serve a sentence of more than 12 months on any of them.[7]  See 21 U.S.C. § 802(58)(A) (defining "serious drug felony").

Bonita argues that a time-served sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment because society and Congress's understanding of an appropriate sentence has substantially evolved since the Court originally sentenced him.  This is established, Bonita argues, because Congress has now determined that conduct like his warrants a statutory sentence of at least 10 years, rather than a mandatory life sentence. (Doc. #918, pp. 17-18.)  Bonita also argues that the need for the sentence to afford adequate deterrence is satisfied because he has served most of his sentence in a "notoriously harsh penitentiary" and a time-served sentence is a substantial sentence.  (Id. at 18.)

After considering all the § 3553(a) factors, both in connection with Bonita's eligibility for a sentence reduction and a sentence which is sufficient but not greater than necessary, the

---

[7] For the 2005 unlawful possession of cocaine and unlawful possession of cocaine and marijuana with intent to sell, manufacture or deliver, Bonita was sentenced to 55 days of jail and credit for time served; for the 2006 unlawful possession of cocaine with intent to sell, manufacture or deliver, Bonita was sentenced to 201 days in jail, credit for time served; for the 2008 unlawful possession of cocaine, Bonita was sentenced to 2 days jail and credit for time served.  (Doc. #790, ¶¶ 79, 80, 82.)

Court concludes that the appropriate sentence is 240 months imprisonment as to Count One (reduced from life), followed by a term of ten years supervised release; and a concurrent term of 240 months imprisonment as to Count Ten (reduced from 360 months), followed by a concurrent term of six years of supervised release, with all the conditions and special conditions of supervised release in the Second Amended Judgment (Doc. #775) reimposed.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Eric Bonita's Motion for Reduced Sentence (Doc. #918) is granted in part and defendant's sentence on Count One is reduced to 240 months imprisonment concurrent with a term of 240 months on Count Ten, with all other terms and conditions to apply as originally imposed.

2. United States Probation shall file a copy of the final Presentence Report under seal.

**DONE and ORDERED** at Fort Myers, Florida, this ___12th___ day of May 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

- 20 -